WILLIAM P. FLEMING, Appellant, v. P. H. BURKE.

Contract to Sell Real Estate: PRINCIPAL AND AGENT; RATIFICATION: EVIDENCE In an action for breach of contract to sell and convey real estate, made by the agent of the vendor on terms different from those stated by the owner, the purchaser cannot recover, and the fact that the purchaser makes a partial payment to the agent on the unauthorized contract, which is repaid by an order of court, does not amount to a ratification of the contract. Evidence considered and held to show that the agent and purchaser knew the terms upon which the owner proposed to sell but made an unauthorized contract.

VoL. 122 IOWA—28.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

WEDNESDAY, JANUARY 27, 1904.

SUIT at law to recover damages for a breach of contract. There was a directed verdict for the defendant. The plaintiff appeals.—*Affirmed.*

*Heins & Heins* for appellant.

*Jamison & Smyth* for appellee.

SHERWIN, J.—The defendant was the owner of a farm which he listed for sale with H. M. Troy, a land agent of Cedar Rapids. The terms of sale, other than the price, were not fixed at the time it was thus listed. About a month thereafter Troy wrote to the defendant that he had a prospective purchaser for the farm, and submitted to the defendant a proposition of purchase from the party referred to. It was an offer to pay $40 per acre for the land, $100 to be paid as soon as contract of sale was executed, $1,000 when deed and possession were delivered to him, and it was stated "that he will secure the balance by first mortgage back on the land at six per cent. interest, payable semi-annually, the principal being payable in multiples of one hundred dollars, at any interest-paying date." This proposition was sent to the defendant in a letter bearing date August 21, 1900. In answer to this letter the defendant, on the 23d of the same month, wrote to Troy that he must have $40 per acre net, and that he understood from his letter that his man would pay six per cent. interest, payable semi-annually, and $100 at each interest-paying date, and said, "If that is the way it reads, * * * it will be all right for me." A few days after this the plaintiff and Troy entered into a written agreement for the transfer of the land to the former, Troy sign-

ing as the agent of Burke. It stipulated for the payment of
$100 at the time, which was paid to Troy, and for the pay-
ment of the balance of the purchase price as follows: $1,000
on the 1st of March, 1901, and $100, or any multiple thereof,
afterwards at any interest-paying date, "with interest at six
per cent. per annum, payable semi-annually, the whole
amount so remaining being payable six years after March
first, 1901, the portion unpaid after March first, 1901, to be
secured by first mortgage back on said premises, payable on
above terms." This contract and the money paid thereon by
the plaintiff were sent to the defendant by mail on the 31st
day of August, 1900. On the next day the defendant re-
turned the money to Troy, and wrote him that as he under-
stood the contract the remainder of the purchase price would
draw interest only after March 1, 1901, and that the plain-
tiff could not have the land on those terms. He further stated
that it could not all be paid in six years because of a mort-
gage on the land, but he said that if the plaintiff would take
the land subject to the mortgage, and pay interest "from
now," "he can have possession of the farm at once, except
about twenty acres pasture and about twenty acres in corn."
He also stated that the house was vacant, and that the plain-
tiff could have possession of that at once. This letter was
duly received by Troy and shown to the plaintiff, and there-
after they made a new contract in writing whereby the plain-
tiff agreed to assume the payment of the mortgage and apply
the same "as such proportionate amount of the purchase
price, the balance over to be paid as follows." The contract
then provided for the payment of the balance precisely as did
the former contract. The defendant would not accept this
contract.

It will be noticed that the first proposition submitted to
the defendant by Troy did not contemplate any delay in the
execution of the deed or in giving the purchaser possession
of the farm, but on the contrary, it was an offer to pay $1,100
whenever a deed was furnished and the possession given, and
to then secure the balance, with interest, and this offer, as

well as the subsequent correspondence between Troy and the defendant, must be considered in determining whether Troy ever had any authority to make either of the contracts before us, and in construing the contract in fact made by Troy. It is clear from the first proposition that the plaintiff offered to pay interest only from the date of the execution of the mortgage back to the defendant, for such is in effect its terms, and such seems to have been the defendant's understanding of it. So much of the offer was satisfactory to the defendant, but, whether he understood the offer as to future payments in multiples of $100 or not, he did not agree thereto, as his letter of the 23d of August clearly shows. Troy, then, had no authority to make a contract which would postpone interest on the unpaid purchase price or provide for payments other than $100 at a time, and the contract of August 30th was clearly not authorized by the defendant, on the latter ground, at least. This objection was probably avoided, however, in the second contract, because of the plaintiff's agreement to assume the mortgage then on the land. So that we have really but one question to determine, and that is whether the contracts postponed the interest on the balance of the purchase price until March 1, 1901. We believe such to have been the intent and understanding of the plaintiff, and it is unquestioned that such was the defendant's understanding. The plaintiff was advised that he could have a deed and the possession of practically the whole one hundred sixty acres at once. Notwithstanding this, the contracts provide for the deed and possession on the 1st of March following. If he understood that he was bound by them to pay interest on the unpaid purchase money from the date of the contract, there was no sense in delaying the deed and possession. Furthermore, the defendant advised the plaintiff of his construction of the contract of August 30th, and objected thereto, but no attention was paid to the objection, and the same terms were carried into the later one. In view of these facts, it is hardly profitable to discuss section 3038 of the Code, or to review the cases cited by the appellant in support of his contention that

a present debt will bear interest from its date, in the absence of express stipulation. Here the contract provided for interest, but is uncertain as to when the interest shall commen ce. Construed in the light of the entire transaction, and as the parties themselves understood it, and as we think the plaintiff intended it, interest could only·have been received from March 1, 1901, whereas the defendant insisted that it must begin on the date of the contract. Again, the defendant was not bound to sell or convey under an ambiguous or uncertain contract, which might be the subject of future litigation. He clearly stated his terms, and, with full knowledge of what they were, it would have been an easy matter for the plaintiff and Troy to make a contract that complied with them without quibble or question. They chose to take their chances on another course, and must suffer the consequences.

The contention that the contract was ratified by the judgment requiring the defendant to repay the $100 paid to Troy by the plaintiff can hardly be sustained. Its acceptance by Troy was unauthorized. It was returned to him for that reason, and he kept it, probably with the consent of the plaintiff, certainly without the sanction of the defendant. The judgment was not the act of the defendant, but of the court, and, if held to be a ratification by the defendant, would establish the doctrine of a ratification by force.

The judgment is AFFIRMED.